# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **DAVID E. WHITE, JR.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Case No. 16-2509 (RJL)** |
| | ) | |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**FILED**

**MAY - 7 2020**

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

## MEMORANDUM OPINION

(May 5ᵗʰ, 2020) [Dkt. ## 18, 19]

Plaintiff Captain David E. White, Jr. ("plaintiff" or "White"), an Army veteran who was injured during a suicide bombing in Afghanistan on March 2, 2012, brings suit against the United States ("defendant" or "the Government"), challenging a U.S. Army Board for the Correction of Military Records' ("ABCMR" or "Board") denial of his application for additional Traumatic Servicemembers Group Life Insurance ("TSGLI") benefits for his inability to perform activities of daily living ("ADL") for at least 90 days following a traumatic injury.   Plaintiff seeks an additional award of appropriate TSGLI program benefits, worth $25,000, and an award of attorney's fees and costs based on the Government's alleged violations of the Administrative Procedure Act ("APA"), 5 U.S.C. § 551 *et seq*. *See* First Am. Compl. ¶¶ 21-25 [Dkt. #14].  Before this Court are the parties' Cross-Motions for Summary Judgment.  *See* Pl.'s Motion for Summary Judgment [Dkt. #18] ("Pl.'s Mot."); Def.'s Cross-Motion for Summary Judgment [Dkt. # 19] ("Defs.'

1

Mot."). For the following reasons, defendant's motion for summary judgment [Dkt. # 19] is **GRANTED**, and plaintiff's motion [Dkt. # 18] is **DENIED**.

## BACKGROUND

### I.    Procedural History

Plaintiff is a former active-duty Army captain, now in the reserves, who was traumatically injured by an improvised explosive device on March 2, 2012 while serving in Afghanistan. Pl.'s Mot. at 1. He suffered injuries to his right arm as a result of the blast, including a right arm fracture and lacerations. Pl.'s Mot. at 1 (Administrative Record ("AR") 250); Def.'s Mot. at 1. He spent 18 days in a hospital recovering from his wounds. Pl.'s Mot. at 1 (AR 140-60); Def.'s Mot. at 5 (AR 1-13).

White subsequently filed several claims under the TSGLI benefits program, requesting benefits for his injuries and loss of ADLs. The Government does not dispute that, as an active duty soldier serving in the U.S. Army, he was eligible to apply for TSGLI benefits. *See* Def.'s Mot. at 5 (AR 1-13). White filed his first claim for TSGLI benefits on May 16, 2012, seeking benefits for inpatient hospitalization for at least 15 days due to a traumatic injury. Def.'s Mot. at 5 (AR 1). In support of his claim, he included a form completed by his certifying medical provider, Dr. Stephanie Susskind, certifying that he was hospitalized for at least 15 days. Def.'s Mot. at 5 (AR 6); Pl.'s Mot. at 5. While his first claim was still pending, White filed a second claim on November 30, 2012, seeking TSGLI benefits for his alleged *ongoing* inability to perform two ADLs—bathing and

dressing—covering the entire period since his injury on March 2, 2012. Pl's. Mot. at 5-6 (AR 30-61); Def.'s Mot. at 5 (AR 30-42).

The Office of Servicemembers Group Life Insurance ("OSGLI") approved White's first TSGLI claim for 15-day hospitalization on May 22, 2012 in the amount of $25,000. It denied, however, his second claim on February 20, 2013 for additional compensation for his loss of ADLs, citing a lack of evidence that he was unable to independently bathe and dress up to the next claim threshold—more than 30 and at least 60 days. Pl.'s Mot. at 6 (AR 62-65); Def.'s Mot. at 5 (AR 62-64).

On October 22, 2013, White's request for reconsideration, Pl.'s Mot. at 7 (AR 66-113); Def.'s Mot. at 5 (AR 66-68), was also denied on the grounds that he had already received payment for his 15-day hospitalization and had not provided evidence that he was "incapable of performing ADLs of dress, or bathing for greater than 30 days." *See* Def.'s Mot. at 6 (AR 114-118); Pl.'s Mot. at 7 (AR 117-18).   OSGLI's letter of denial also stated, "If the Soldier is able to perform the activity by the use of accommodating equipment/adaptive, then the Soldier is considered able to independently perform the activity." Pl.'s Mot. at 7 (AR 117-18).

On his appeal to the TSGLI Appeals Review Panel in May 2014, White provided additional supporting documentation for his additional benefits claim, including: (1) a new medical certification by Dr. Dennis Hopkins, Pl.'s Mot. at 7 (AR 119-31); Def.'s Mot. at 6 (AR 131, 441); (2) a caregiver affidavit from plaintiff's mother, Pl.'s Mot. at 7 (AR 241); Def.'s Mot. at 7 (AR 448); (3) a statement from Ms. Boccia, plaintiff's physical therapist, Pl.'s Mot. at 7 (AR 240); and (4) additional medical records, Pl.'s Mot. at 7 (AR 244-50).

3

However, the TSGLI Appeals Review Panel unanimously denied his appeal, finding that the "[d]ocuments indicate you were able to compensate for the temporary loss of use of your right arm by using your unaffected arm to perform most activities within 60 days of your injury… [and] needed assistance with bathing only *at* the 60 day milestone." Pl.'s Mot. at 7–8 (quoting AR 260-61) (emphasis added); *see also* Def.'s Mot. at 6 (AR 258-59).

Following this denial, White appealed his claim to the Army Board for Correction of Military Records on May 4, 2015. Pl.'s Mot. at 8 (AR 262-66); *see also* Def.'s Mot. at 6 (AR 262). Again, the Board advised the plaintiff that he did not meet the standard for establishing additional TSGLI losses past the 60-day mark. Def.'s Mot. at 6 (AR 443); Pl.'s Mot. at 8 (AR 405-07).

Plaintiff filed his initial complaint in this Court on December 23, 2016, seeking judicial review of the Board's denial of benefits. *See* Compl. ¶ 1 [Dkt. #1]. This case was subsequently stayed while the ABCMR undertook a voluntary remand and reconsideration of its decision. *See* 3/16/17 Minute Order Granting in Part Def.'s Mot. to Remand & Stay. On remand, the Board decided, on September 12, 2017, to award a second increment of $25,000, reflecting a loss of two ADLs for 60 days post-injury, but declined to award a third increment for loss up to the fully claimed period of 90 days.[1] Def.'s Mot. at 7 (AR

---

[1] The Board appears to have miscalculated May 2, 2012 as 60-days post-traumatic event and June 2, 2012 as 90-days post-traumatic event. AR 442. The correct dates are May 1, 2012 (60-days post-traumatic event) and May 31, 2012 (90-days post-traumatic event). This miscalculation, however, is irrelevant to plaintiff's 90-day ADL loss claim because, as explained below, the Board concluded that plaintiff was independent in his ADLs well before the 90-day mark.

433); Pl.'s Mot. at 9-10 (AR 433).  In particular, the Board found Dr. Hopkins's statement and plaintiff's mother's affidavit conflicted with medical records showing that he was able to perform ADLs independently well before the 90-day mark.  Def.'s Mot. at 7-8 (AR 447-449, 452-453).

On October 30, 2017, I granted the parties' joint motion to lift the stay in this case, and I also granted plaintiff leave to file his first amended complaint.  *See* 10/30/17 Minute Order.  Plaintiff filed his first amended complaint later that same day, seeking reversal of the Board's denial of his 90-day ADL loss claim.  *See* First Am. Compl.  I issued an Order to Show Cause for lack of prosecution under Local Rule 83.23 on December 11, 2017.  *See* Order to Show Cause [Dkt. # 16].  Plaintiff responded the next day and requested a dispositive-motion briefing schedule.  *See* Pl.'s Response to Order to Show Cause [Dkt. # 17].  Pursuant to the briefing schedule, the parties filed their cross-motions for summary judgment on January 15, 2018, Pl.'s Mot. [Dkt. # 18], and February 15, 2018, Def.'s Mot. [Dkt. # 19], respectively, seeking judicial review of the Board's decision under the APA.

## II.    Statutory Scheme

The TSGLI program provides insurance benefits to servicemembers who "sustain[] a traumatic injury ... that results in a qualifying loss."  38 U.S.C. § 1980A(a)(1).  A servicemember may demonstrate a "qualifying loss" under the statute by demonstrating that his injury resulted in an "inability to *independently* perform two or more of the following six functions: (i) Bathing (ii) Continence (iii) Dressing (iv) Eating (v) Toileting [and] (vi) Transferring [in or out of a bed or chair]."  *See id.* § 1980A(b)(2)(D) (emphasis added).  Congress authorized the Department of Veterans Affairs to carry out the program

5

with the assistance of the Department of Defense and a private insurer, the Office of Servicemembers' Group Life Insurance ("OSGLI"), Def.'s Mot. at 3, and to prescribe the terms of coverage by regulation. *See id.* § 1980(A)(b)(1), (3). The Department of Veterans Affairs subsequently passed regulations expanding the range of statutorily covered losses to award between $25,000 and $100,000 for a "[t]raumatic injury, other than traumatic brain injury, resulting in inability to perform at least 2 Activities of Daily Living (ADL)," that falls into at least one category of "scheduled loss." 38 C.F.R. § 9.20(f)(20). To assist in implementing the program, the VA has also published a *Traumatic Injury Protection Under Servicemembers' Group Life Insurance (TSGLI): A Procedural Guide* (hereinafter "Procedures Guide") that the agency uses to determine eligibility under the program. *See* Def.'s Mot. Ex. 1, October 1, 2016 Procedures Guide (version 2.38).[2]

## ANALYSIS

### I.      Standard of Review

"'Summary judgment is an appropriate procedure for resolving a challenge to a federal agency's administrative decision when review is based upon the administrative record,'" as it is here. *Bloch v. Powell*, 227 F. Supp. 2d 25, 31 (D.D.C. 2002) (quoting *Fund for Animals v. Babbitt*, 903 F. Supp. 96, 105 (D.D.C. 1995)). In such cases, the district court "sits as an appellate tribunal" and "the entire case … is a question of law." *Am. Biosci., Inc. v. Thompson*, 269 F.3d 1077, 1083 (D.C. Cir. 2001) (quotations omitted). Courts will thus defer to the agency's "findings of fact if they are supported by substantial

---

[2] This was the version in place at the time of the Board's denial of plaintiff's claim for additional benefits. *See* Def.'s Mot. at 3 n.2.

evidence and the [Agency's] other findings and conclusions if they are not arbitrary, capricious, an abuse of discretion, or contrary to law." *Montgomery Kone, Inc. v. Sec'y of Labor*, 234 F.3d 720, 722 (D.C. Cir. 2000) (quotations and citation omitted); *see also* 5 U.S.C. § 706(2)(A).

As such, a court must generally defer to an agency's reasonable interpretation of the facts even if another interpretation would be plausible on the court's own review of the record. *See Fla. Gas Transmission Co. v. FERC,* 604 F.3d 636, 645 (D.C. Cir. 2010) ("When reviewing for substantial evidence [the Court] does not ask whether record evidence could support the petitioner's view of the issue, but whether it supports the [agency's] ultimate decision.") (citation omitted); *Rossello ex rel. Rossello v. Astrue*, 529 F.3d 1181, 1185 (D.C. Cir. 2008) ("Substantial-evidence review is highly deferential to the agency fact-finder, requiring only 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'") (quoting *Pierce v. Underwood,* 487 U.S. 552, 565 (1988)).[3]

The parties dispute the appropriate level of deference to a military board evaluating TSGLI benefits. Defendant argues that even greater deference is owed to the decisions of

---

[3] "The arbitrary and capricious standard of § 706(2)(A) is a 'catchall' that generally subsumes the 'substantial evidence' standard of § 706(2)(E)." *Schmidt v. Spencer*, 319 F. Supp. 3d 386, 391 n.3 (D.D.C. 2018) (citing *Ass'n of Data Processing Serv. Organizations, Inc. v. Bd. of Governors of Fed. Reserve Sys.*, 745 F.2d 677, 683–84 (D.C. Cir. 1984) ("When the arbitrary or capricious standard is performing that function of assuring factual support, there is no *substantive* difference between what it requires and what would be required by the substantial evidence test, since it is impossible to conceive of a 'nonarbitrary' factual judgment supported only by evidence that is not substantial in the APA sense ...."); *accord Safe Extensions, Inc. v. FAA*, 509 F.3d 593, 604 (D.C. Cir. 2007)).

military boards than is owed to civilian agencies "under an 'unusually deferential application of the arbitrary or capricious standard of the APA.'" *See* Def.'s Mot. at 10 (quoting *Cone v. Caldera*, 223 F.3d 789, 793 (D.C. Cir. 2000)).  Plaintiff argues that no such heightened deference applies here.  *See* Pl. Mot. at 12 (citing *Ivey v. McHugh*, 614 F.App'x 257, 261 (6th Cir. Jun. 5, 2015); *Koffarnus v. United States*, 175 F. Supp. 3d 769, 775 (W.D. Ky. 2016)).  Unfortunately, the answer is not so simple!

Our Circuit usually accords heightened deference when reviewing decisions by military review boards.  *See, e.g.*, *Roberts v. United States*, 741 F.3d 152, 158 (D.C. Cir. 2014) (quoting *Kreis v. Sec'y of the Air Force*, 866 F.2d 1508, 1514 (D.C. Cir. 1989)); *Schmidt*, 319 F. Supp. 3d at 391; *Chamness v. McHugh*, 814 F. Supp. 2d 7, 13 (D.D.C. 2011); *Escobedo v. Green*, 602 F. Supp. 2d 244, 248 (D.D.C. 2009).  When doing so, however, it distinguishes between "military judgment requiring military expertise," which necessitates the "unusually deferential standard," and "review of the Board's application of a procedural regulation governing its case adjudication process," which only requires the typical APA standard.  *Kreis v. Sec'y of Air Force*, 406 F.3d 684, 686 (D.C. Cir. 2005). When applied to TSGLI benefits, however, courts in this Circuit are split as to whether the "unusually deferential standard" or the typical APA standard applies.  *See White v. United States*, No. 17-193 (RMC), 2018 WL 5251740, *8 (D.D.C. Oct. 22, 2018) (Collyer, J.) (applying the "unusually deferential standard"); *Moreno v.* Spencer, 310 F. Supp. 3d 83, 87 (D.D.C. 2018) (McFadden, J.) (declining to apply the "unusually deferential standard"). I need not, however, resolve whether the "unusually deferential standard" applies here

today because the Board's denial was not even arbitrary and capricious under the less

deferential APA standard.[4]

## II.     The Board's Decision to Deny Plaintiff's 90-Day ADL Loss Claim Was Neither Arbitrary and Capricious nor Unreasonable.

Plaintiff argues that the Board's application of its own rule—the TSGLI Procedures

Guide—was arbitrary and capricious. *See* Pl.'s Mot. at 14–20.  Specifically, plaintiff

argues that because the Procedures Guide lacks the "force of law," any Board decision that

rests on it does not warrant *Chevron* deference. *See id.* at 16–17.[5]  The Government

emphasizes in its reply brief that it is *not* arguing that the Procedures Guide is entitled to

*Chevron* deference. *See* Def.'s Reply at 6.  Rather, it merely argues that the Procedures

Guide is "a body of experience and informed judgment to which courts and litigants may

properly resort for guidance," *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944), and

should be afforded "considerable weight," *United States v. Mead*, 533 U.S. 218, 227–28

(2001). *See* Def.'s Reply at 6.  However, since the Board only relied upon the Procedures

---

[4] To the extent plaintiff argues that the Board failed to apply the "benefit of the doubt" standard, *see* Pl.'s Reply at 2, plaintiff forfeited this argument by failing to preserve it below.  The Board has twice reviewed plaintiff's claims: once during plaintiff's initial appeal and once during remand.  At neither time did plaintiff raise this "benefit of the doubt" argument.  And, before this Court, the first time plaintiff raised this argument was in his reply brief.  Consequently, I will not consider it. *Nat'l Wildlife Fed'n v. EPA*, 286 F.3d 554, 562 (D.C. Cir. 2002) ("[T]here is a near absolute bar against raising new issues—factual or legal—on appeal in the administrative context."); *see also Koffarnus*, 175 F. Supp. 3d at 777 (employing the administrative waiver doctrine against considering the "benefit of the doubt" argument advanced by the same counsel representing plaintiff); *Blackwood v. United States*, 187 F. Supp. 3d 837, 845 (W.D. Ky. 2016) (same).

[5] I note that, in support of this argument, plaintiff primarily cites to two unpublished out-of-Circuit opinions. *See id.*

Guide to evaluate plaintiff's 60-day ADL loss claims, I need not resolve this deference dispute as it applies to the existing 90-day ADL loss claim because the Board's denial of that claim rested on evidence that plaintiff was independent in his ADLs *well* before the 90-day mark. AR 452-53. As such, it did not rely upon the Procedures Guide's conceptual framework of compensatory techniques or adoptive behaviors.

In its evaluation of plaintiff's 90-day ADL loss claim, the Board did indeed *mention* evidence concerning compensatory techniques.[6] But ultimately, it *rested* its decision on the fact that subsequent medical evidence from plaintiff's healthcare providers established that plaintiff was "able to perform ADLs" and was "self-reliant in usual daily activities"— with no mention of compensatory techniques or adaptive behaviors—prior to the 90-day mark. AR 452-53. As such, plaintiff's argument that the Board's conclusion was arbitrary and capricious for relying on the Procedures Guide is simply unsupported by the record.

Moreover, the Board's denial of plaintiff's claim rested on its reasonable interpretation of the multiple sources of evidence that plaintiff did not suffer a loss of his two claimed ADLs for 90 consecutive days. *See* Def.'s Mot. at 12-13 (AR 432-453). How so?

---

[6] Specifically, a medical provider noted on April 30, 2012 that plaintiff was using "compensatory techniques for computer, shaving, brushing teeth, using fork and spoon, toilet hygiene, and applying deodorant," and "a doctor advisor for the TSGLI Appeal Panel" concluded that plaintiff's injuries would not cause him a loss in ADLs that plaintiff could not overcome "by adoptive behavior … much beyond the 30-day milestone." AR 452. Neither piece of evidence establishes that plaintiff still required use of adaptive techniques in relation to his two claimed ADLs on or after the 90-day mark.

The Board relied on evidence from plaintiff's caretakers, who had direct observation of plaintiff's ability to perform his usual ADLs.  The Board considered notes from an occupational therapy assistant on April 30, 2012, who recorded that plaintiff stated he had various levels of difficulty bathing, manipulating buttons and/or zippers, and tying his shoes, but *not* that he was *unable* to perform these ADLs.  AR 452; *see also* 38 U.S.C. § 1980A(b)(2) (requiring an "inability" to perform the ADL to obtain TSGLI benefits, not merely difficulty in performing the ADL).  In addition, notes from another medical provider stated that plaintiff was "self-reliant in usual daily activities" on April 24, 2012 (i.e. 53 days after plaintiff's injury) and on May 7, 2012.  AR 453; *see also* AR 189, 199.  The Board also considered direct observations from a medical doctor from May 14, 2012, who concluded that there were "no activities patient not able to perform ADLs to" and that plaintiff was "able to perform ADLs."  AR 452-53.  This evidence all pre-dated the 90-day mark and indicates that plaintiff—although having some noted difficulty—was able to perform his two claimed ADLs independently.

The Board considered, but rejected, the evidence plaintiff proffered in support of his claim, including two medical certifications, a letter from plaintiff's occupational therapist, and an affidavit from his mother.  Concerning the May 1, 2014 medical certification from Dr. Hopkins, the Board noted that Dr. Hopkins did not personally observe plaintiff, and his opinion certifying plaintiff's inability to perform ADLs was based on a post hoc review of his medical records.  AR 131, 447, 448, 453.  Further, it concluded that Dr. Hopkins's statements that plaintiff was unable to bath or dress independently from May 2, 2012 to June 8, 2012 were inconsistent with the record.  AR 447-48.  The Board

11

reasonably concluded that the numerous direct observations recorded by plaintiff's healthcare providers contradicted and thus outweighed Dr. Hopkins's post hoc review of plaintiff's medical records. AR 453.

As for an earlier medical certification from Dr. Susskind, which noted an *ongoing* loss of plaintiff's ability to bathe and dress independently as of April 25, 2012, AR 40, the Board noted that Dr. Susskind "had not observed the patient's loss but reviewed the patient's medical records to make these statements." AR 447. It pointed out that those same medical records from March 21, 2012 indicated that plaintiff could carry out most ADL tasks, albeit with pain and compensation, and that plaintiff was released without limitation. *Id.* The Board's rejection of Dr. Susskind's certification was reasonable because subsequent medical records from direct observation indicated that any ongoing loss that Dr. Susskind believed existed on April 25, 2012, was resolved *prior* to the 90-day mark.

In addition, with respect to the letter from plaintiff's occupational therapist, the Board evaluated the therapist's conclusion that at least two ADLs were impaired for at least 60 days in the Board's evaluation of plaintiff's 60-day ADL loss claim. AR 451. But that evidence, of course, does not establish that plaintiff suffered such losses on or after the 90-day mark, and the Board was reasonable when it concluded that the plaintiff overcame any losses *before* the 90-day mark.

As far as plaintiff's mother's affidavit, some of his mother's statements actually undercut his request. Specifically, his mother stated that her son could have completed ADLs as early as May 5, 2012, substantially short of the 90-day period. AR 375. In support

of her son's claim, plaintiff's mother also stated that plaintiff attended occupational therapy until about August 6, 2012, and that she drove him to and from his therapy between March and June 2012. *Id.* Indeed, she stated that plaintiff continued to have pain in his elbow and arm after his first round of therapy, which required additional therapy that ended in February 2014. *Id.* However, this affidavit contains no evidence that plaintiff was unable to perform his two *claimed* ADLs—bathing and dressing—on or after the 90-day mark. Consequently, the Board's decision to discount his mother's affidavit was reasonable.

Finally, White contends that prior case law undermines the Government's argument that an injured servicemember who is "otherwise healthy" is not rendered ADL incapable by a single limb trauma. Pl.'s Mot at 19 (citing *Koffarnus*, 175 F. Supp. 3d at 779). I disagree. This argument fails for two reasons. First, the Board's discussion of this point was in relation to plaintiff's 60-day ADL loss claim, which, again, the Board ultimately granted. AR 450-52. As discussed above, the Board based its rejection of plaintiff's 90-day ADL loss claim on the paucity of evidence that plaintiff suffered any ADL loss on or after the 90-day mark. AR 452-53. Second, in *Koffarnus*, the Board relied solely on "generic," and near verbatim, conclusory statements from one provider, and failed to include "any analysis or reasoning" for discounting other evidence. *Koffarnus*, 175 F. Supp. 3d at 779; *accord Holmes v. United States*, No. 17-1674 (JDB), 2019 WL 131955, *9 (D.D.C. Jan. 8, 2019) (Bates, J.) (distinguishing *Koffarnus* on similar grounds). Not so here. The Board analyzed the evidence both in support of, and in opposition to, White's claims and articulated the basis for each of its conclusions.

In the final analysis, White has raised no argument, unfortunately, that demonstrates that the Board acted arbitrarily and capriciously when it denied plaintiff's 90-day ADL loss claim, nor any argument demonstrating the Board's analysis of the record was anything but reasonable.  As such, deference must be accorded to the Board's decision, and I decline to overturn it.[7]

<h2 style="text-align:center">CONCLUSION</h2>

For all of the foregoing reasons, defendant's Motion for Summary Judgment [Dkt. #19] is **GRANTED** and plaintiff's Cross-Motion for Summary Judgment [Dkt. #18] is **DENIED**.  An order consistent with this decision accompanies this Memorandum Opinion.

RICHARD J. LEON
United States District Judge

---

[7] Because I am denying plaintiff's motion, I need not reach the Government's argument that the Court cannot grant the relief requested by plaintiff.  Def.'s Mot. at 19-20.

14